[Civ. No. 3903. Third Appellate District.—October 19, 1929.]

CHARLES E. CORNELIUS, Appellant, v. MAY E. CORNELIUS, Respondent.

Homer C. Mills for Appellant.

A. P. G. Steffes and Frank T. Hennessey for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment of divorce which was awarded the defendant upon her cross-complaint and confirming a previous agreement settling the property rights of the spouses. The sole question is the validity of this contract.

The plaintiff filed an action for divorce against the defendant on the ground of extreme cruelty. The complaint alleged that she was possessed of certain community property which she was holding by virtue of a previous written agreement purporting to settle all property rights between them, but which contract was procured by means of duress on the part of the defendant consisting of threats to prosecute the plaintiff on a charge of adultery, and that this contract was subsequently canceled by the resumption of matrimonial relations and by mutual consent of the parties. The complaint prayed for a decree of divorce and the cancellation of the property settlement contract, together with an award of a share of the community property.

The answer denied *seriatim* the charges of cruelty, the existence of any community property, the exercise of duress or threats in procuring the execution of the agreement and the cancellation by a resumption of marital relations or by mutual consent. The affirmative defense of *res judicata* was asserted with respect to the attack upon the validity of this agreement. In a cross-complaint the defendant charged the plaintiff with adultery and prayed for a divorce on that ground.

Upon the trial the court adopted specific findings against the plaintiff on each of the material issues and awarded the defendant a decree of divorce upon her cross-complaint. The validity of the property settlement agreement was upheld.

The appellant does not attack that part of the judgment which grants the defendant a divorce, but contends that the findings upholding the property settlement agreement are unsupported by the evidence. Much of his brief is devoted to an attack upon the jurisdiction of the Municipal

Court of Los Angeles, which passed upon the validity of that contract.

The findings and judgment are amply supported by substantial evidence upon every essential issue.

The parties to this action were married in 1908 and lived in harmony for several years. The appellant was a linotype operator, and for some time was engaged with the "Los Angeles Examiner" at a salary of about $50 a week. The respondent testified that at the time of their marriage the appellant was without means and subsequently acquired none, his wages having been expended for their maintenance; that, upon the contrary, she owned the Byron Hotel when they were married, which she afterward sold, leaving her a net balance of $2,500; that she engaged in the apartment house business during their married life, investing her separate funds in one apartment house after another, each of which was sold at a substantial profit until in 1921 she had accumulated a fund of some $8,700, which she kept in a bank in her own name, and in which fund the appellant had no interest. At the time of the trial of this case it appears that there was but about $1600 of this fund remaining. Dissensions arose between the spouses. During respondent's illness in May, 1922, the appellant fraudulently procured and cashed a check on her account for $4,500. Upon discovering this fraud she threatened to prosecute him and he returned nearly all of this money. Subsequently the appellant was arrested and convicted of battery upon his wife. He appropriated her automobile and forged her name to obtain a transfer of the license to his name. He consorted with another woman whom he accompanied upon an extended automobile trip and confessed to his wife his illicit intercourse with this woman. The spouses were separated in January, 1924. For a period of time he occupied an apartment with communicating bedrooms, in one of which this woman slept. They shared the use of the dining-room and kitchen together. The evidence is convincing that during this time and upon other occasions he was guilty of adultery with this woman. Indeed, this fact is not controverted on appeal. Near midnight on March 21, 1924, the respondent, in company with two officers, visited her husband's apartment, where they found him with his paramour under circumstances which led to

his arrest on a charge of adultery. This charge was subsequently dismissed for lack of prosecution on the part of the respondent. February 16, 1924, the following letter was sent to appellant:

"Los Angeles, Cal.
"Feb. 16, 1924.

"Mr. C. E. Cornelius:

"With the persuasion of my friends and to spare myself and family the disgrace of making you answer to the charge of *forgery* and paying the penalty for same you go to my attorney and sign an affidavit that he will prepare for you. That must be done by Monday evening Feb. 18th, 1924, and then you can go your way as long as you conduct yourself so as not to disgrace me with the woman that has caused you your trouble.

"Your wife,
"MRS. C. E. CORNELIUS."

April 2, 1924, the parties to this action went together to the office of E. M. Schwartz, who was acting as attorney for the respondent in the negotiations preliminary to the contemplated divorce proceedings. Without controversy this property settlement agreement was then signed by the respective parties. It recited that the parties were then separated and that a suit for divorce had been dismissed; that during the time the parties remained separated the appellant would pay his wife the sum of $15 a week as maintenance; that all property then in the possession of the respective spouses together with all property which might be acquired by either party in the future should remain the separate property of such party. It was then provided that in the event the parties should become reconciled and resume matrimonial relations, this contract should thereupon become void. The parties were not thereafter reconciled and respondent testified that they never again resumed matrimonial relations. Payments were made by the appellant on this contract for the period of about a year, and then he ceased to comply with its terms. In August, 1925, suit was commenced by this respondent against her husband in the Justice's Court of Los Angeles County to recover the deferred payments upon this contract. The appellant answered, setting up the defense that the contract had been annulled by the reconciliation of the

parties and their resumption of marital relations, but neglected to claim that the agreement was procured by duress or threatened prosecution of a crime. A trial ensued. All the issues were decided against this appellant and a judgment was duly entered in effect, upholding the validity of the contract. From this judgment no appeal was perfected, and it became final.

This suit was subsequently instituted. The appellant's effort to prove that this contract settling property rights was procured by duress utterly failed. ▇ There was a clear variance between the allegations of his complaint and the proof thereof. The complaint charged the respondent with procuring the signature of the appellant by threatening to prosecute him for adultery. The letter which was offered in proof of the charge of duress read in part, " . . . to spare myself . . . the disgrace of making you answer to the charge of *forgery* and paying the penalty for same you go to my attorney and sign an affidavit. . . . " It does not appear what the "affidavit" had to do with the property contract. Certainly it had no reference to the alleged threat to prosecute the appellant for adultery. The letter was written before the discovery of the offense of adultery. The appellant testified that immediately after signing the document he sat down and said: "I had to sign that contract to keep out of the penitentiary." ▇ Mrs. Cornelius testified regarding this transaction: "After the contract was signed he passed some insulting remark, I don't just recall what he said, and I wadded up the contract and threw it out. I said, 'If that's the way you feel about it we will just let the courts settle this' (adjustment of property rights). He picked it up and begged me to take it." This seems to refute the theory of coercion. Moreover, the respondent further testified that she never urged the signing of the contract by threatening a prosecution of any sort, but, on the contrary, that the appellant voluntarily offered to do so. On cross-examination she said: "He came to me and offered to do that voluntarily. . . . Q. Now you never used any threats at all to get him to sign that contract, did you? A. Absolutely not." She further testified that at no time since the execution of the contract had they ever lived together or resumed matrimonial relations. This is a sufficient showing in spite of the conflict of evidence

upon which to support the findings and judgment upholding the binding validity of the contract. In truth, the record may well be deemed to be sufficient upon which to support a finding that all the property possessed by the respondent at the time of the divorce proceeding was her separate property independent of the provisions of the contract in question.

Surely the merits of this cause are favorable to the respondent. Her domestic happiness was destroyed by the conduct of the appellant. There is ample grounds upon which to sustain all the relief which she secured.

With this view of the record it becomes unnecessary to consider the further contention of the appellant that the Municipal Court was without jurisdiction to pass upon the validity of the contract, or the respondent's claim that the present controversy over its validity is *res judicata*.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.